**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LAMAR SIMSON,

    Petitioner,                                CASE NO. 09-cv-10882

v.                                           JUDGE PAUL D. BORMAN
                                           UNITED STATES DISTRICT JUDGE

NICK LUDWICK,

    Respondent,

_____/

**OPINION AND ORDER
(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO
ISSUE A CERTIFICATE OF APPEALABILITY, (3) AND DENYING AN
APPLICATION FOR LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS***

      Petitioner Lamar Simson, a state inmate currently incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, alleging that he is incarcerated in violation of his constitutional rights. Following a bench trial in Wayne County Circuit Court, Petitioner was convicted of armed robbery, MICH. COMP. LAWS § 750.529. He was sentenced to twelve to twenty years in prison for that conviction. In his *pro se* pleadings, Petitioner alleges the following two claims: (1) trial counsel was ineffective for failing to provide him with an opportunity to accept a plea offer, and (2) there was insufficient evidence to support his conviction. For the reasons stated below, the Court will deny the petition. The Court will also decline to issue Petitioner a certificate of appealability and will deny him an application for leave to proceed on appeal *in forma pauperis*.

**I.**       **BACKGROUND**

This case arises because of a robbery that occurred on January 21, 2006, at a CVS Pharmacy in Detroit, Michigan. Petitioner and co-defendant, Alonzo Underwood, shoplifted some batteries. Petitioner was charged with armed robbery and felonious assault. A bench trial was held on June 6, 2006. Testimony revealed the following.

The CVS security guard, Robert Holloway, testified that he was working the evening shift on the day in question when he came into contact with Petitioner and co-defendant Underwood. He was standing at the door greeting the customers as they entered the store. He said he directed Underwood toward the cameras while Petitioner went down another aisle. Holloway testified that "[Underwood] picked up a camera and then he stepped over to the batteries." Trial Tr., 9, June 6, 2006.

Holloway testified that he then noticed Petitioner standing in line with a handful of batteries. He said his attention was then diverted by a female customer who entered the store in a hurry. Holloway said he followed the woman, because she seemed "suspicious," and then he was subsequently called to the front of the store by an employee.

Holloway further testified that he investigated the call by walking outside the store, looking around. As he was returning to the store entrance, he saw Underwood exiting the store with a handful of batteries that he was attempting to put in his pocket. Holloway said he told Underwood to "put the batteries down" and leave the property, but Underwood refused. Trial Tr., 12, June 6, 2006. Rather, Underwood swore and flared his chest at Holloway.

According to Holloway's testimony, a "black car was coming up in the parking lot, you know, kind of fast." Trial Tr., 12, June 6, 2006. Holloway said Petitioner was the person driving the black car toward him. He said he ducked behind another car. Petitioner then stopped his car

2

between him and Underwood. He said Petitioner opened the car door and reached in his waistband, pointing something at him and said, "[B]ack up, I am going to pop your ass." Trial Tr., 18, June 6, 2006. Holloway testified that Underwood then got into Petitioner's car and they drove away. Holloway said the female who had diverted his attention earlier was sitting in the passenger seat.

As Petitioner was driving out of the parking lot, a police car was entering and Holloway flagged it down. He pointed to Petitioner's vehicle and told them that he had a weapon. The police immediately pulled Petitioner over and arrested him. No gun was recovered. Rather, Petitioner was holding a remote control for his car stereo in his hand. Holloway testified at trial that he could not see the object that Petitioner was holding but was scared that he was going to be shot. He believed that what Petitioner was pointing at him was a gun.

Robert Thomas, a Detroit Police Officer, testified next. He said Underwood ran away after the car was pulled over but was eventually apprehended. Officer Thomas said Petitioner was the driver of the vehicle and a black female was sitting in the front passenger seat. His partner, Officer Edward Beeks, recovered a number of packs of batteries.

Officer Beeks testified that, after they stopped the vehicle, Officer Thomas took off on foot after the passenger in the rear seat ran. After backup arrived, Officer Beeks said he patted everyone down, handcuffed and separated them, and then searched the car. He recovered the batteries from the back seat under the driver-side seat.

Elizabeth Tipton, the cashier at CVS, testified that it was Petitioner who stole batteries from the battery center on the night in question. She said he collected two packs of batteries, stood in line as if he were going to pay for them, then ran for the door. She also saw Underwood grab some batteries and run out of the store. She called Holloway. Holloway responded by investigating

3

outside.

Co-defendant Underwood testified next. He acknowledged that he received a plea deal regarding this matter. He said he was with Petitioner and Gina Katrine, the woman in the car, on the night in question. He testified that he was sitting in the back seat, while Petitioner was driving. He said he went into CVS, leaving Petitioner and Katrine in the car. Holloway showed him a few items and then he stood in line with some batteries in hand. He admitted to leaving the store without paying for the batteries.

Underwood further testified that Petitioner picked him up in the black car, and when Petitioner opened the door, he had some words with Holloway. Underwood demonstrated how Petitioner was holding the remote control and said he was pointing it at Holloway.

Petitioner did not testify.

The trial court acquitted Petitioner of the felonious assault charge and found him guilty of armed robbery, by and through the use of the remote control coupled with his spoken words.

At sentencing, Petitioner stated that he was happy with his trial counsel, but was not satisfied that counsel failed to adequately inform him about a plea offer of three to twenty years instead of the twelve to twenty years that he received. Petitioner said he would have accepted the plea if he understood what counsel was offering. He also stated that he should not have made the "pop your ass" comment and would not have if he knew that it would have led to a conviction. Sentencing Hr'g Tr., 5, June 22, 2006.

Following his sentencing, Petitioner filed a motion to remand for a *Ginther*[1] hearing with the

---

[1] *People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922 (1973).

Michigan Court of Appeals. The Court of Appeals remanded the case for a *Ginther* hearing to determine whether Petitioner received the effective assistance of counsel. *People v. Simson*, No. 271415 (Mich.Ct.App. Aug. 20, 2007).

At the *Ginther* hearing on March 5 and 14 of 2008, trial counsel testified that he conveyed all plea offers to Petitioner, but Petitioner did not want to accept any offers because he said he was innocent. The following colloquy took place between Petitioner's counsel and his former trial counsel:

> Q. All right. Were there any discussions about – about a plea? Or were there any offers given to him?
> A. Yes.
> Q. All right. I'll ask you about that real briefly. By the way now, did you discuss any sentence – the sentence guidelines with him?
> A. Yes.
>
> * * *
>
> Q. So when you had these discussions with him, during this four to five months, did you tell him that based on the testimony, it was a good chance he could be found guilty of armed robbery?
> A. I told him that there was a significant risk of that. But he maintained that the – that he did not tell the security guard that he was going to pop him.
>
> * * *
>
> Q. So – and you– just give us your testimony then for, the last time I'll ask you, what you remember as being the offer that you conveyed to him that he could accept?
> A. The offer that, I believe, I conveyed to him, was there was a Michigan Department of Corrections sentence for an Unarmed Robbery. I believe the tail was going to be 15 years. I believe that the, you know, it was – I want to say it was 5 or 7 years.
> Q. Even at the very end?
>
> A. At the very end, I think – you know, that's what I remember. That's what I remember the offer to be.
> Q. Okay.
> A. And I think, maybe Ms. Czarnecki said it was – she'd pass out 3 years at trial.

5

If she did, that was conveyed to him. Any offer that was made at the trial was always conveyed to him.

*Ginther* Hr'g Tr., 6-8, 14-15, Mar. 14, 2008

At that hearing, Petitioner testified that he did not understand that counsel was communicating a plea offer to him when counsel mentioned a *Cobbs*[2] plea deal of three to twenty years.

The trial judge determined that trial counsel was credible and that he was not ineffective regarding the plea issue. The trail judge found that Petitioner had "professed his innocence and did not wish to enter into any plea." *Ginther* Hr'g Tr., 27, Mar. 14, 2008.

Following the *Ginther* hearing, Petitioner filed an appeal of right with the Michigan Court of Appeals, alleging the following two claims: (1) he was denied the effective assistance of trial counsel because trial counsel did not provide him the opportunity to accept a plea offer, and (2) there was insufficient evidence to support his armed robbery conviction when it was undisputed that he did not have a weapon.

The Michigan Court of Appeals affirmed Petitioner's conviction and sentence. *People v. Simson*, No. 271415, 2008 WL 2697766 (Mich.Ct.App. July 10, 2008). Subsequently, Petitioner filed an application for leave to appeal that decision with the Michigan Supreme Court, raising the same claims raised in the Court of Appeals. On November 25, 2008, the Michigan Supreme Court denied the application because "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Simson*, 482 Mich. 1067, 760 N.W.2d 265 (2008).

Petitioner neither filed a post-conviction motion with the state trial court nor a petition for

---

[2]*People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993).

a writ of certiorari with the United States Supreme Court. Rather, on March 9, 2009, he filed this habeas petition, raising the same claims raised in the state appellate courts.

## II. DISCUSSION

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this Court's habeas corpus review of state-court decisions. Under the AEDPA, a federal court's review of a habeas proceeding is limited. A federal court may not grant a writ of habeas corpus unless the state adjudication on the merits either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d).

The Supreme Court clarified that standard in *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

With that standard in mind, the Court proceeds to address Petitioner's claims.

### B. Claim I–Ineffective Assistance of Counsel

In his first habeas claim, Petitioner alleges that he received ineffective assistance of counsel

7

when he was not given the opportunity to take a plea offer by the prosecution. Petitioner received a post-trial sentence of twelve to twenty years when the plea offer was for three to twenty years. The Michigan Court of Appeals, the last court to issue a reasoned decision on this issue, stated:

> Pursuant to a remand from this Court, *People v. Simson*, unpublished order of the Court of Appeals, entered August 20, 2007, the trial court held a *Ginther* hearing concerning whether defendant received ineffective assistance of counsel. The sole issue was whether trial counsel communicated a plea offer to defendant. Both defendant and his trial counsel testified. Defendant denied informing counsel that he did not want to accept any plea offers. However, defense counsel testified that he conveyed all plea offers to defendant, but defendant unequivocally declined to accept any offers and maintained that he was innocent. The trial court essentially determined that defense counsel was more credible. Affording deference to the trial court's assessment of credibility, [], the trial court's factual finding that defendant's trial counsel conveyed the plea offers to defendant and that defendant chose to reject the offers because he maintained his innocence is not clearly erroneous.

*Simson*, 2008 WL 2697766, at *1 (citations and footnote omitted).

To demonstrate ineffective assistance of counsel, Petitioner must show that his counsel's performance was seriously deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show that counsel's performance was deficient, Petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 688. In applying that standard, "'a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Fortson*, 194 F.3d 730, 736 (6th Cir. 1999) (quoting *Strickland*, 466 U.S. at 689). In order to establish prejudice, a defendant must show that, but for counsel's error, the result would have been different. *Weinberger v. United States*, 268 F.3d 346, 352 (6th Cir. 2001). Further, "[j]udicial scrutiny of counsel's performance must be highly deferential . . . . Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

8

assistance." *Strickland*, 466 U.S. at 689 (citation omitted). In the context of a guilty plea, "the claimant need only show a reasonable probability that he would have pleaded differently" given competent advice. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003).

"A defense attorney's failure to notify his client of a prosecutor's plea offer constitutes ineffective assistance of counsel under the Sixth Amendment and satisfies the first element of the *Strickland* test." *Griffin*, 330 F.3d at 737; *see also Guerrero v. United States*, 383 F.3d 409, 416 (6th Cir. 2004) (failure to convey a plea offer constitutes ineffective assistance); *Smith v. United States*, 348 F.3d 545, 552-53 (6th Cir. 2003) (same).

Although Petitioner testified at the *Ginther* hearing that his trial counsel never informed him of the state's plea offers, trial counsel testified that he did so inform him of all offers. The trial court then found trial counsel's testimony credible. That factual finding is presumptively correct, and Petitioner has made no showing to overcome that presumption by clear and convincing evidence. 28 U.S.C. §2254(e).

Accordingly, the Court concludes that the Court of Appeals's decision not to vacate Petitioner's conviction and allow him to plead to the crime and receive a lesser sentence was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Petitioner is not entitled to habeas relief regarding this claim.

### C. Claim II–Insufficient Evidence

In his second habeas claim, Petitioner alleges that there was insufficient evidence to convict him of armed robbery. The Michigan Court of Appeals considered, and rejected, this claim, stating:

9

> MCL 750.529 was amended in 2004 and now states, in pertinent part:
>
> > A person who engages in conduct proscribed under section 530 and who in the course of engaging in that conduct, possesses a dangerous weapon *or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon*, is guilty of a felony punishable by imprisonment for life or for any term of years. [Emphasis added.]
>
> A conviction under this version of MCL 750.529 requires a prosecutor to prove "(1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon."
>
> The complainant testified that defendant reached in his waistband, came out with "something," pointed it at the complainant, and said, "Back up, I am going to pop your ass." The complainant then took cover behind another car. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that defendant possessed an article that he fashioned in a manner that led the complainant to reasonably believe it was a dangerous weapon and that defendant represented orally that he was in possession of a dangerous weapon. Thus, there was sufficient evidence to support defendant's armed robbery conviction.

*Simson*, 2008 WL 2697766, at *1-2 (citations omitted).

In reviewing a habeas petitioner's claim that the evidence was insufficient to convict him, a federal court is "bound by two layers of deference to groups who might view facts differently than" the Court would. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). First, as in all sufficiency of evidence challenges, a court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "In doing so, [the Court does] not re-weigh the evidence, re-evaluate the

10

credibility of witnesses, or substitute [its] judgment for that of the jury." *Id.* (citing *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Therefore, even if a federal habeas court might not have convicted the defendant had it been the factfinder in the state court, it must uphold the verdict if any rational trier of fact could have found the defendant guilty after resolving all factual disputes in favor of the prosecution. Second, even if a federal habeas court concludes that a rational trier of fact could not have found a habeas petitioner guilty beyond a reasonable doubt, on habeas review, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205; *see also Tucker v. Palmer*, 541 F.3d 652, 666 (6th Cir. 2008), *cert. denied* --- U.S. ---, 130 S.Ct. 109 (2009) (citing 28 U.S.C. § 2254(d)(1)).

In the instant case, the Court of Appeals properly upheld Petitioner's conviction. Michigan law clearly states that if a person reasonably believes that an article is fashioned in a manner to lead a person to think it is a deadly weapon, then that person is considered armed. The other half of the statute requires that force be used in order to cause fear or apprehension in the victim. Here, Holloway stated that he feared that he was going to be shot after Petitioner held up an object, which he believed was a gun, and told him to "[b]ack off, I am going to pop your ass." Holloway acknowledged that it was dark and he could not be certain what Petitioner was holding, but he was afraid that he was going to be shot. Any reasonable factfinder could determine that all the requisite elements for armed robbery in this case were satisfied beyond a reasonable doubt.

Accordingly, the Court finds that the Court of Appeals's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Petitioner is not entitled to habeas relief on this claim.

### D. Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong . . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that reasonable jurists would not find its assessment of Petitioner's claims debatable or wrong. The Court therefore declines to issue a certificate of appealability and denies Petitioner an application for leave to proceed on appeal *in forma pauperis*.

## III. CONCLUSION

Accordingly, **IT IS ORDERED** that the "Petition for Writ of Habeas Corpus" [dkt. # 1] is **DENIED.**

**IT IS FURTHER ORDERED** that the Court declines to issue Petitioner a certificate of appealability and denies his application for leave to proceed on appeal *in forma pauperis* because any appeal would be frivolous. *See* Fed.R.App.P. 24(a).

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: December 20, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on December 20, 2010.

S/Denise Goodine
Case Manager